JOSHUA L. BAILY and Others, Respondents, *v.* LEWIS M. HORNTHAL, Appellant; ALBERT WEIS and ROBERT WEIS, Defendants.

*Special partnership — insolvency — presumed upon a voluntary transfer of property — special capital effective as a claim only when there is an agreement for its return — debts of a special partnership are to be paid before the withdrawal of special capital.*

It is only where it appears that a transfer of property was voluntary that the presumption will be indulged that the person making such transfer was insolvent, and the burden of showing that it was not made while he was in an insolvent condition will be imposed upon him.

If a firm is shown to be overwhelmingly insolvent to-day the inference is justified that it was so yesterday and for some period back, but how far back will necessarily depend upon the degree of insolvency and the remoteness of the period to which the inference relates.

In an action brought against Albert and Robert Weis and Lewis M. Hornthal by judgment creditors of Albert and Robert Weis, with unsatisfied executions, to compel Hornthal to account for moneys received from their judgment debtors,

it appeared that the plaintiffs recovered judgments on December 20, 1892 against Albert and Robert Weis for goods sold and delivered to the firm of "Weis Bros.;" that from May 1, 1886, until April 30, 1891, said firm was a limited partnership, organized under the laws of the State of Texas and transacting business at Galveston in that State, Albert and Robert Weis being general partners and Lewis M. Hornthal a special partner. The partnership was renewed yearly until April 30, 1891, when it was permitted to expire, Albert and Robert Weis retaining the assets and continuing the business under the same name without change or interruption. At the time of the formation of the limited partnership Hornthal contributed $50,000 of its capital, and on each renewal thereof he withdrew and at once returned $50,000, and there was no other or different contribution by him than such as was originally made.

On November 5, 1891, "Weis Bros." failed, announcing their insolvency by the execution of a deed of trust to one Gus Lewi for the benefit of certain creditors. The contracts for the sales by the plaintiffs to "Weis Bros.," with one exception, were made prior to the termination of the limited partnership.

In November, 1888, "Weis Bros." loaned to the firm of Hornthal, Whitehead, Weissman & Co. of New York, of which firm Lewis M. Hornthal was a member, their accommodation paper to the amount of $25,000, which was at first entered in the ledger of the latter firm to the credit of Lewis M. Hornthal, but the entry was subsequently corrected and canceled by charging the item back to Lewis M. Hornthal and crediting "Weis Bros." with the amount, so that it then appeared as a loan from "Weis Bros." to the firm. After the dissolution of the limited partnership of "Weis Bros.," Lewis M. Hornthal was charged with $25,000 in his special capital account with "Weis Bros.," and his New York firm was credited with the same amount in its account, the payment to him being effected by a cancellation of the loan to his New York firm. The balance to Hornthal's credit in his special capital account was then transferred to the account between "Weis Bros." and Hornthal's New York firm, and for this balance, which was subsequently paid by Lewi to Hornthal, Hornthal was preferred in the trust deed executed to Lewi by the firm of "Weis Bros." for the benefit of its creditors.

The trial court found that, at the time of its dissolution, the special partnership of "Weis Bros." was insolvent.

*Held*, that if, in the honest belief that the firm of "Weis Bros." was solvent, the partners, as between themselves, made an agreement by which, in good faith and without injury to the then creditors of the firm, the special partner was to receive what was agreed to be paid to him at a future date, such could not be regarded as a fictitious claim or one that could not be enforced;

It further appeared there was no agreement between "Weis Bros." and Hornthal for the return to Hornthal of the capital balance.

*Held*, that in that case there was no agreement that made the capital balance of Hornthal effective as a claim which "Weis Bros." could lawfully prefer;

That as, when the preference was given to Hornthal (the liability to the plaintiffs having been contracted subsequent to the dissolution of the limited partnership) the plaintiffs were then existing-creditors, and the special partnership was

insolvent, Hornthal, in the absence of any agreement to pay him, was only entitled to the balance of the capital contributed by him after the payment of such creditors;

That the firm being insolvent and no proof being offered to show that there were sufficient assets to pay all the creditors, and the existence of any claim in favor of Hornthal being negatived, the general partners could not take their assets and apply them to a claim which was not shown to have had a valid foundation;

That as to so much of the plaintiffs' claims as were debts of the special partnership, they were entitled to be paid before the withdrawal by Hornthal of any portion of his special capital.

Van Brunt, P. J., dissenting so far as a recovery was allowed based upon an indebtedness contracted subsequent to the dissolution of the special partnership.

Appeal by the defendant, Lewis M. Hornthal, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 11th day of January, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

Also an appeal by the defendant, Lewis M. Hornthal, from the decision of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 10th day of January, 1895, which directs judgment for the plaintiffs Joshua L. Baily, Frederic L. Baily and Albert L. Baily for the sum of $8,333.24 against the defendant, Lewis M. Hornthal; in favor of the plaintiff James Talcott against the defendant, Lewis M. Hornthal, for $865.85, and in favor of the plaintiffs for the sum of $250, additional allowance and the costs and disbursements of this action.

*William N. Cohen* and *Frederick P. Delafield*, for the appellant.

*Charles E. Hughes* and *Arthur C. Rounds*, for the respondents.

O'Brien, J.:

This is an action by judgment creditors with unsatisfied executions to compel the defendant Hornthal to account for moneys received from the judgment debtors. These judgments, aggregating $8,189.49, were recovered on December 20, 1892, against Albert Weis and Robert Weis for goods sold and delivered to the firm of Weis Brothers. From May 1, 1886, until April 30, 1891, "Weis Bros." was a limited partnership (organized under the laws of Texas) doing a dry goods business at Galveston. The judg-

ment debtors, Albert and Robert Weis, were the general partners, and the defendant Hornthal was the special partner. The limited partnership was renewed yearly until April 30, 1891, when it was permitted to expire. The judgment debtors, Albert and Robert Weis, retained the assets and continued the business under the same name without change or interruption. On November 5, 1891, "Weis Bros." failed, announcing their insolvency by the execution of a deed of trust to one Gus Lewi for the benefit of certain creditors, whose claims aggregated $225,806.16. This deed of trust covered all the firm merchandise and real estate. Certain property of the . firm had been pledged previously, and the individual property of Albert Weis was conveyed in trust for certain creditors, but no surplus was realized from either. The claims of the other creditors (unsecured), including plaintiffs', amounted to $314,894.56, and the available assets outside of the trust estate were open accounts then estimated to be worth $166,404.23. The contracts for the sales by plaintiffs to Weis Brothers, with one exception, were made prior to the termination of the limited partnership. The deliveries took place in May, June and July, 1891, except two under Joshua L. Baily & Co.'s first contract, which were made on April 20 and 30, 1891, respectively, and amounted in value to $711.29.

At the formation of the limited partnership in April, 1886, Hornthal contributed $50,000 to its capital. On each renewal he withdrew and at once returned $50,000, so that there was no other or different contribution than such as was originally made. In November, 1888, Weis Brothers loaned to the firm of Hornthal, Whitehead, Weissman & Co., of New York, their accommodation paper to the amount of $25,000, which was at first entered in the ledger of the latter firm to the credit of L. M. Hornthal, but this was subsequently corrected and canceled by charging the item back to Hornthal and crediting Weis Brothers with the amount, so that it then appeared as a loan from Weis Brothers to the New York firm of which the defendant Hornthal was a member. After the dissolution of the special partnership Hornthal was charged with $25,000 in his special capital account with Weis Brothers, and his New York firm was credited with the same amount in their account, the payment to Hornthal being effected by cancellation of the loan to Hornthal, Whitehead, Weissman & Co. The balance to Horn-

thal's credit in the special capital account ($26,433.34) was then transferred to the account between Weis Brothers and Hornthal's New York firm, and for this balance Hornthal was preferred in the Lewi trust deed, which balance was subsequently paid to Hornthal by the trustee.

Upon the trial these facts and others that will be adverted to were presented without objection, and the only exceptions appearing in the record relate to the findings of the court upon which the decision was based. There being no objections, therefore, to evidence or to the sufficiency of the complaint, what was said in *Knapp* v. *Simon* (96 N. Y. 292) is apposite : " It was also the duty of the court below, in the absence of objections to the sufficiency of the complaint, to give the plaintiff the benefit of any cause of action established by the evidence."

Turning then to the record as made, and leaving out of consideration the theory that the defendant Hornthal was to be charged with the common-law liability of a general partner, which was abandoned upon the trial and not considered by the judge, the case upon the evidence has two aspects : *First*, the plaintiffs may be regarded as creditors of Albert Weis and Robert Weis, whose rights have been violated by the preference of a fictitious claim; or, *second*, the plaintiffs may be treated as creditors of the special partnership of Weis Brothers. The first was the position taken by the trial court, and in this aspect it was immaterial whether plaintiffs were creditors of the special partnership. Upon the latter theory, if sustainable, $1,323.11, included in the Baily judgment, will have to be eliminated, because the claim therefor arose subsequent to the dissolution of the special partnership.

Upon evidence which we regard as far from satisfactory, the trial judge found that the special partnership of Weis Brothers was insolvent at the time of the dissolution, and that its liabilities were in excess of the amount of special capital contributed by Hornthal. As in this view there was no indebtedness from the firm to Hornthal, his claim being treated as fictitious, it was held that the creditors of the firm succeeding the special partnership could recover the amount paid to Hornthal by the trustee. The ground for this conclusion was, that the rights of the creditors of Albert Weis and Robert Weis were violated by the preference of a fictitious claim.

As said in the opinion below : " No money was due to Hornthal, either from the special partnership or the new firm, and the general partners had no right to convey to him the property•of this insolvent firm which belonged to its creditors."

Necessarily the entire foundation for the finding and conclusion of the trial judge was that the special partnership at the time of its dissolution was insolvent. The evidence on the part of the plaintiffs in support of this finding, started with the showing that at the time of the failure of the general partnership in November, 1891, there was a deficiency of assets amounting to at least $150,000 ; and it was urged that this raised a presumption that the condition thus appearing dated back to the dissolution of the special partnership in the April preceding, and to support such presumption authorities were relied on which hold that where a voluntary conveyance has been made, and the grantor is subsequently shown to be insolvent, insolvency will be presumed at the time of the. transfer. Without finding fault with this proposition of law, it. may be said that the payment to the defendant Hornthal was not a voluntary conveyance of property of the firm, unless we presume that the firm was then insolvent. In other words, to obtain the benefit of the rule two presumptions should be established : *First,* a voluntary conveyance or gift ; and, *secondly,* insolvency when it was made. If the special partnership at its dissolution was not insolvent, then clearly, Hornthal having the right to a repayment of his capital contributed, such repayment could not be regarded as having been made without consideration; and it would be going further than any of the cases relied upon by plaintiffs to hold that the court will presume that the gift was voluntary,. and upon that build another assumption that the firm was insolvent when the payment was made. As we understand it, it is only where it is either conceded or proved that the transfer was voluntary that the presumption will be indulged in that the person making it was insolvent, thus thrusting upon him the burden of showing that it was not made while he was in such an insolvent condition. Undoubtedly, if a firm is shown to be overwhelmingly insolvent to-day, the inference is justified that it was so yesterday and for some period back, but how far back will necessarily depend upon the degree of insolvency and the remoteness of the period to which

the inference relates. This is a logical inference and is to be distinguished from that in the class of cases to which we have referred, in which it has been held that where a voluntary gift is shown insolvency will be presumed. The plaintiffs are entitled to the full benefit of the logical inference that arises, and the weight of this is to be determined by the condition of the general partnership when it failed in November, 1891.

It is admitted by Hornthal that the deficit at that time amounted to $150,000. In addition, the plaintiffs' experts presented a report showing the course of business from April 1, 1891, to the date of the failure, which gives the total losses during that period as $32,415. Besides this we have the drawings of the partners from April until November, amounting to between $20,000 and $30,000, to which must be added depreciation of unsold merchandise and losses in outstanding accounts. These represent quite a considerable amount and are as much as, or more than, the deficit of $150,000 admitted by Hornthal. It is not our purpose to go over the accounts, which have been ably summarized by the respective counsel, the plaintiffs showing a deficit of at least $200,000, while the defendant Hornthal makes an apparent showing of assets amounting to $546,596.21, and of total liabilities, secured and unsecured, amounting to $540,700.72. This wide divergence in the value of the assets is reconciled to some extent by remembering that plaintiffs have taken the valuation of an insolvent firm that has stopped business, while the defendant Hornthal regards them as assets belonging to a live and going business and not to a defunct firm. This will account for the financial condition of the firm after it had failed, as shown by plaintiffs, as contrasted with the appellant's showing when it was a live and going concern. It may be that the plaintiffs are right, and upon conflicting evidence we should not differ with the finding made by the learned trial judge, that at the time of the dissolution of the special partnership it was insolvent; but we have referred to the respective contentions of the parties for the purpose of showing that, while after the failure of the general partnership there was a large deficit, resulting from the sale of property and its distribution among creditors, there was no overwhelming proof to sustain the conclusion that the special partnership at the time of its dissolution was insolvent.

Assuming, then, a difference of opinion upon this question, depending upon how we look at the proof, and taking the view adopted by the trial judge, that the special partnership was, in fact, insolvent, the question remains whether the adjustment at that time made between the partners can be successfully assailed by those who subsequently became creditors of the general partnership, with which the defendant Hornthal had no connection. At first blush it would seem that upon the dissolution of the special partnership the only ones interested in the adjustment made between the parties would be the partners themselves and their then creditors; and there is no good reason apparent why the partners could not, as between themselves, settle their differences as they saw fit, provided this was done without injury to or violation of the rights of their creditors. If, therefore, their creditors were fully protected, the partners were at liberty, if acting in good faith and without any intent to defraud, to reach a basis of settlement which should include the right of the defendant Hornthal to be paid his special capital. And, assuming that no creditor was wronged, and, as was here done, the special partner permitted the general partners to take over all the assets and continue the business upon an agreement to pay him what he contributed by way of special capital, could not he, as against the general partners, sue and recover upon such agreement to pay him? Could they, in such an action, set up as a defense that they were relieved from liability, because, at the time they made the agreement, the firm, without their knowledge, was insolvent, and that the claim they had agreed to pay was, therefore, fictitious? In this connection it must be remembered that the general partners had complete control of the business and the books, and were in such a position when they made the agreement that they knew, or will be presumed to have known, the actual condition of the firm; and, if instead of accounting and determining the exact status, they preferred to make the agreement to pay the special partner his capital, we fail to see why they should not keep such agreement.

Of course, this discussion has proceeded upon the theory that such an arrangement was in good faith and without any intent to defraud. If there was anything to show that the special partnership was so overwhelmingly insolvent that all the partners knew, or should be

presumed to have known, its condition, so as to justify the inference that, by a collusive arrangement entered into between the parties, it was agreed that the special partner was to get his money out at the expense of those who subsequently might deal with the general partnership, then, undoubtedly, because a fraud upon them, they could recover the amount which, under such circumstances, was paid. Here, however, there was no evidence of bad faith or fraud, or proof that what was done was with intent to cheat subsequent creditors. One of the Weises, examined for the plaintiffs, testified: " On the 30th of April, 1891, and prior thereto, the firm of ' Weis Brothers' enjoyed good credit, and our assets exceeded our liabilities on the 30th of April, 1891." It may be that the evidence shows that in this statement the witness was in error, but it is important as rebutting the presumption that the firm was in such a condition of insolvency that the parties knew, or should have known, that it was insolvent. If, in the honest belief that it was solvent — and nothing to the contrary appears in this record — the partners as between themselves made an agreement by which, in good faith and without injury to the then creditors, the special partner was to receive what was agreed to be paid him at a future date, we fail to see how this can be regarded as a fictitious claim or one that could not be enforced.

Our conclusion upon this branch of the case, therefore, is that, had there been evidence of an agreement to pay Hornthal, the plaintiffs' proofs did not go far enough, and while there may have been sufficient to justify the conclusion that the special partnership was insolvent at the date of its dissolution, there is nothing to show any fraudulent arrangement or agreement made in bad faith by which the claim that the defendant Hornthal had against the partnership was changed from a valid claim as between themselves into a fictitious one as against subsequent assailing creditors. It will thus be seen that we do not agree with the plaintiffs in the view that if there had been an agreement, at the time of the dissolution of the limited partnership, to pay Hornthal his capital balance, it and the payments thereunder would have been fraudulent and void as against so much of the plaintiffs' claim as arose after such dissolution. We have been led into this discussion because it is alleged in the complaint, and stated by the trial judge in his opinion, that notes were given to Hornthal for the bal-

ance due him. This, as evidencing an adjustment and agreement to pay, would, if proved, have given the defendant Hornthal a valid enforcible claim, and the intimation to the contrary in the opinion below was erroneous.

Notwithstanding the language of the complaint and the opinion, plaintiffs insist that there was no agreement between Weis Brothers and Hornthal for the return of the capital balance, and in this we think the plaintiffs are right. That portion of the complaint which alleges that notes were given is denied by the answer, and there was no evidence produced upon the trial to substantiate it. Moreover, Hornthal testified that he had no agreement except that under which the special partnership was organized. Accordingly, the firm simply expired on the 30th of April, 1891. The agreement under which it had existed contains no provision for the return of the capital. The parties were left to the ordinary legal consequences attending the capital contribution. Hornthal had a capital account with Weis Brothers, and when that firm expired there was a book balance of something over $50,000. On May 23, 1891, without any agreement whatever, but simply in part payment of the balance shown by the books, $25,000 was charged to Hornthal in his account with Weis Brothers, and the same amount was credited to Weis Brothers in their account with Hornthal, Whitehead, Weissman & Co. The debt from Hornthal, Whitehead, Weissman & Co. squared this much of the capital balance, and left in Hornthal's special account a balance of something over $26,000. There was, therefore, no agreement that made the capital balance effective as a claim which the judgment debtors could lawfully prefer. The partners in May, 1891, simply took $25,000, and in the November following $26,433.34 of their property and gave it to Hornthal, and when this preference was given in November the claims of these plaintiffs had been incurred and they were then existing creditors. In this situation the finding that the special partnership was insolvent is all important, because, in the absence of any agreement to pay, Hornthal was simply entitled to the balance of the capital contributed after the payment of creditors. And it appearing that the firm was insolvent, and no proof being offered to show that there were sufficient assets to pay all the creditors, therefore, the existence of any claim in favor of Hornthal being negatived, the general partners could not take their

assets and apply them to a claim which was not shown to have had a valid foundation.

Upon the other branch of the case, as to so much of plaintiffs' claims as were debts of the special partnership, nothing need be added to what was said in the opinion of the court below, because, so far as plaintiffs can be considered as creditors of the special partnership of Weis Brothers, they were entitled to be paid before the withdrawal by the defendant Hornthal of any portion of his special capital, and, to the extent of their claims as against the amount so withdrawn, the plaintiffs, as creditors of the limited partnership, were entitled to judgment as against Hornthal, *first,* because of the insolvency of the limited partnership and the preferential payments to such special partner; and, *second,* because of the withdrawal of special capital during the continuance of the limited partnership.

Our conclusion, therefore, is that the judgment below was right and should be affirmed, with costs.

PARKER, J.:

Confirming as we do the finding of the Special Term that the limited partnership was insolvent at its expiration, April 30, 1891, the conclusion necessarily follows that the general partnership which succeeded to its assets and liabilities could not devote any part of such assets in payment of the amount originally contributed by the special partner, as against creditors either of the limited or the general partnership. And this is so because the general partnership was not indebted to the special partner, or the limited partnership, but was indebted to both prior and subsequent creditors, and such creditors could not be deprived of any portion of the assets at the instance and for the benefit of a third party not a creditor. While the plaintiffs as creditors of the general partnership could not have effectually complained of an honest effort by its members to pay the creditors of the limited partnership in preference to him, he did, and does, have the right to insist that no part of the assets of the firm of which he is a creditor shall be turned over to one who has not an enforcible claim against the general partnership. I concur with Mr. Justice O'BRIEN for an affirmance of the judgment.

VAN BRUNT, P. J.:

While I concur with Mr. Justice O'BRIEN in the affirmance of the judgment so far as it relates to liabilities incurred before the dissolution of the special partnership, there seems to me no ground for a recovery based upon indebtedness which was contracted subsequent to such dissolution. The creditors of the new firm certainly had no reason to complain because of the payment back by such new firm of the special capital which had been contributed to the limited partnership by the special partner. The only persons who could claim that such special capital should be held for the purpose of the payment of their debts were the creditors of the special partnership; and, although the plaintiffs may have been both creditors of the special partnership and of the new firm, that gave them no greater rights as to the indebtedness of the new firm to them than if such indebtedness had been the only amount which was due to them.

I am of the opinion, therefore, that the judgment should be modified by striking from the recovery the amount of the indebtedness incurred subsequent to the dissolution of the limited partnership, and as modified affirmed, without costs to either party. .

Judgment affirmed, with costs.